## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                          **Case No. 8:18-cr-339-T33TGW**

**JERRY KOEZENO**

_____ /

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Jerry Koezeno, by counsel Kathleen M. Sweeney, files the following Sentencing Memorandum setting out the factors that the court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

*Proposed Sentence*

By virtue of these directives and how they relate to Brandon Lewis, a sufficient sentence in compliance with § 3553(a)'s mandate is a variance to 84 months, four (4) years supervised release, and no fines and costs. Mr. Koezeno also requests that the Court recommend that he be granted admission to the Bureau of Prison's Residential Drug and Treatment Plan, and that he be placed at FCI Coleman.

*Procedural Background*

Mr. Koezeno, without a plea agreement, has pled guilty as charged to all counts charged in the Indictment; that is Felon in Possession in violation of 18 U.S.C. § 992(g) (Count 1), and Possession with Intent to Distribute Five Grams or More of Methamphetamine in violation of 21 U.S.C. § 841(a).

*Mr. Koezeno's formative years spent in foster care*

The oldest of seven (7) children, Mr. Koezeno was brought into this life by parents immersed in chaos, crime and substance abuse. Dawn Koezeno gave birth to seven (7) children in which four of them were fathered by Jerry Koezeno, Sr., Mr. Koezeno's biological father. The other three children were fathered by Mr. Koezeno's uncle, James Koezeno.

When Mr. Koezeno was three (3) years old, his biological father was sentenced to a long prison term. Mr. Koezeno did not contact with him until he was 18 years old. During his short life with his biological father, Mr. Koezeno witnessed his father physically abuse his mother.

Soon after, Jerry, Sr. was sentenced to prison, Dawn Koezeno married James Kozeno, Mr. Koezeno's uncle. He too physically abused Dawn and there were allegations that James abused Mr. Koezeno.[1]  Both James and Jerry were known to have severe alcohol problems. Dawn Koezeno, who was interviewed by the

---

[1] Mr. Koezeno denies any physical abuse, however, a social history completed by the Pasco School System notes that there allegations of abuse. See Exhibit 1-sealed.

2

Federal Defender's Office, recalls her sons watching the beatings and the toll on them from witnessing the abuse.

By age seven (7) and attending first grade, Mr. Koezeno was placed in his first foster care home- fortunately they were family members. (Exhibit 1 to the PSR). During the first grade, Mr. Koezeno was extensively tested by the school system. (Exhibit 2 to the PSR). School testing concluded that his Verbal IQ Score and Full Scale IQ Score fell within Intellectually Deficient Range and his Performance IQ Score fell within the borderline range of intelligence. (Exh. 2 pg 2). Mr. Koezeno would be in special education classes for the balance of his schooling.

It is unclear from the records when Mr. Koezeno was reunited with his mother. He does recall being with her and his stepfather/uncle until around 10-11 years old. At this time, his step-father's beatings and his mother full blown addiction to opioids became too much for her to bear. She left the state with the children and without James Koezeno's permission. The Department of Children and Family became involved and the children were again placed in foster care. (See Exhibit 3 to the PSR). During Mr. Koezeno's foster care placement, his mother worked on her sobriety and had weekly visits with the children. (Exh

3)(The Federal Defender's Office confirmed this information with Dawn Koezeno).

In his interview that is contained in the Presentence Report (PSR), Mr. Koezeno believes that he had a normal and happy childhood, and that he was in "normal school." The record reflects a different story. He was subject to neglect, abuse, foster care placements and his education was limited by borderline intelligence. Most likely these limitations resulted in Mr. Koezeno's disability payments from age 13 to age 18. (Exh 3).

Children who have experienced abuse or neglect have a heightened need for permanency, security, and emotional constancy and are, therefore, at great risk because of the inconsistencies in their lives and the foster care system. pediatrics.aappublications.org/content/106/5/1145. Moreover,

> Neuroscience teaches us that the early experiences of young children have a tremendous influence on their developing brains. Healthy emotional and cognitive development is shaped by responsive, dependable interaction with adults, while chronic or extreme adversity, such as extreme poverty, caregiver substance abuse or mental illness, exposure to violence or family hardship without appropriate adult support, can cause excessive amounts of the cortisol hormone to be produced resulting in toxic stress, which disrupts developing brain circuits. This kind of prolonged activation of the stress response systems can not only disrupt the development of brain architecture and other organ systems, but can also increase the risk for stress related disease and cognitive impairment well into the adult years. *Harvard University Center on the Developing Child. "In Brief: The Impact of Early Adversity on Children's Development." Center on the Developing Child. Cambridge, MA: 2007.*http://developingchild.harvard.edu/wpcontent/uploads/2015/05/inbrief-adversity1.pdf.

*Mr. Koezeno's drug history and marriage*

Despite his unstable home life, Mr. Koezeno has always been a worker. At age 16, Mr. Koezeno started working as a cook at a fast food chain-a position he held until for two years during high school. Also during high school, Mr. Koezeno worked in the auto body field. He worked with his stepfather for five years and he obtained an auto body license.

Mr. Koezeno also believed he met his soul mate in high school. At age 20, just after he graduated from high school, he married his high school sweetheart. For Mr. Koezeno and his wife produced two children, a son and a daughter. By their births, he had moved into air-conditioning repair. He held that job for seven (7) years, bought a house and had a car. He felt like he was a successful worker, father and husband. All that fell apart for him, when he discovered that his wife had been unfaithful. He stopped going to work and lost his job. They divorced in 2015.

Given Mr. Koezeno's formative years and the stresses he suffered, it is not surprising that he too developed a drug addiction. Mr. Koezeno reports first using cocaine, ecstasy, marijuana and alcohol around 15 years old. Mr. Koezeno's use of drugs continued until his arrest. Around the time of his divorce (2015), Mr. Koezeno had become a daily user of methamphetamine.

He used 1.5 grams a day up to the day of his arrest. The methamphetamine addiction prevented Mr. Koezeno from any longer worker a legitimate job. He turned to selling drugs as a way to support his habit.

*The Guidelines*

The PSR lists a base offense level of 32 due to the quantity of drugs totaling 165.71 grams of ICE. If the drugs subject to the Indictment were only counted (47.06 grams), the base level would be 28.

The difference in the base offense level is due to Mr. Koezeno's post-arrest statement to law enforcement. Although he was not obligated to talk to police, Mr. Koezeno immediately admitted his full involvement in drug dealing to police. Mr. Koezeno made these complete and full admissions without the benefit and protections of a proffer.

A standard provision in United States Attorney's proffer letter is, in pertinent part:

> The government will not offer in evidence during its case-in-chief, or in aggravation of Mr._____' sentence (in accordance with USSG §1B1.8) in the case described above or in any additional prosecution of Mr._____. , any statements made and/or information provided by Mr. _____ at the proffer….

Further, United States Sentencing Guideline §1B1.8(a) states in pertinent part:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range…

In Mr. Koezeno's situation, he freely and voluntarily admitted to distributing a substantial quantity of ICE that resulted in a 4-level swing in the guidelines. In terms of the sentencing guidelines, it is a difference between an advisory range

of 168 months to 210 months (PSR ¶73) and a range of 120 months to 150 months (PSR ¶90).

> *Mr. Koezeno's History and Characteristics of His Offense Suggest That a Sentence of 84 Months Imprisonment Would be "Sufficient but No Greater Than Necessary" to Comply With the Purposes of Sentencing 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence.*

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). When considering the §3553(a) factors, the sentencing judge may give more weight to some factors than others. *See United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States,* 128 S.Ct. 558, 570 (2007).

Mr. Koezeno's guideline range--without a proffer protection and cooperation motion -- is a range of 168 months to 210 months. If his full statement to police had occurred under a proffer, as noted, the range would be 120 months to 150 months. If there had been a substantial assistance motion, typically there would be another two level reduction to a range of 100 months to 125 months (total offense level 25). To that end, Mr. Koezeno seeks a variance to prevent sentencing disparity.   Notably, the United States Sentencing Commission 2017 statistics show that the median sentence for methamphetamine cases is 88 months.

*www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-*

*facts/Methamphetamine_FY17.pdf.*

In addition to seeking a variance to prevent sentencing disparity, Mr. Koezeno submits that his personal characteristics and history are sufficiently mitigating to warrant an additional two level variance from the range of 100 months to 125 months to a range of 84 months to 105 months (total offense level 23). His substance abuse, limited intelligence and unstable and chaotic childhood provide a context into Mr. Koezeno's path. He had little support and zero guidance. And yet for many years, he was fully employed and supported his family.  But as noted, in 2015 when he was divorced his drug addiction spiraled out of control.

A review of his criminal history (PSR ¶¶31-43) show an escalation beginning in 2015 and continuing until his current charges. Notably, he has never served more than 5.2 months of imprisonment. A sentence of 84 months would constitute a sentence that is more than 10 times greater than any sentence he has served. During that sentence, Mr. Koezeno would be able to complete drug treatment and seek additional education. (Exh 3)

Mr. Koezeno submits that a sentence of 84 months is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). In light of the mitigating history and characteristics of Mr. Kozeno, as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 84 months to be followed by a 4-year term of supervised release,

will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

 **Wherefore** for all the reasons stated above, Mr. Koezeno seeks a variance and imposition of a sentence of 84 months.


       Respectfully submitted,

       DONNA LEE ELM
       FEDERAL DEFENDER

       */s Kathleen M. Sweeney*
       Kathleen M. Sweeney
       Assistant Federal Defender
       IN Bar No. 2192-49
       400 North Tampa Street
       Suite 2700
       Tampa, FL. 33602
       Tel.:   (813) 228-2715
       Fax:   (813) 228-2562
       Email: Kathleen_Sweeney@fd.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 21, 2018, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Michael Gordon, AUSA

/s Kathleen M. Sweeney
Kathleen M. Sweeney
Assistant Federal Defender